581 So.2d 619 (1991)
Earl J. ROBERTS, M.D., Appellant,
v.
Marvine HOLLOWAY and Irene Holloway As Co-Personal Representatives of the Estate of Lorene Denise Holloway, Appellees.
No. 89-1892.
District Court of Appeal of Florida, Fourth District.
June 5, 1991.
Certification and Rehearing Denied July 12, 1991.
Steven R. Berger of Wolpe, Leibowitz, Berger & Brotman, Miami, and Adams, Coogler, Watson & Merkel, P.A., West Palm Beach, for appellant.
Linda Singer Stein and Calvin F. David of Thornton, David, Murray, Richard & Davis, P.A., Miami, and Daniel J. Blackman, Hollywood, for appellees.
ANSTEAD, Judge.
This is an appeal by a defendant-physician from a judgment in favor of the plaintiffs in a wrongful death action arising from the appellant's alleged neglect in treating appellees' child for meningitis. Appellant contends that the trial court improperly excluded evidence of the deceased child's possible decreased life expectancy and quality of life due to meningitis, assuming that the child had lived. We affirm.

THE LAW
Section 768.21, Florida Statutes, provides for damages for wrongful death:
768.21. Damages
... Damages may be awarded as follows:
(1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to his death, *620 with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.
* * * * * *
(4) Each parent of a deceased minor child may also recover for mental pain and suffering from the date of injury.
The statute authorizes damages for lost services of a decedent, including a minor child, under subsection (1), and for mental pain and suffering of the child's parents, under subsection (4).
When parents sue for lost services, recovery is limited to the value of the services to which the parent would have been entitled between the date of the child's death and the date he would have reached majority. Georgia Southern & Fla. Railway Co. v. Perry, 326 F.2d 921, 925 (5th Cir.1964). However, the limitation of the child's majority does not apply where the parents sue for mental pain and suffering. The Perry court concluded that the jury could consider the parents' life expectancies, because the jury could logically conclude that the parents' mental pain and suffering for the loss of their child would continue throughout their lives.
In Gross Builders, Inc. v. Powell, 441 So.2d 1142 (Fla. 2d DCA 1983), the court agreed with the Perry court's holding, and noted that in wrongful death actions, the jury may consider the joint life expectancies of the child and the parents in determining the amount of an award to parents for their mental pain and suffering. The court rejected the notion that the parents' claim was limited to the period of the child's minority.[1]

THIS CASE
In most cases a court's failure to allow the jury to consider a child's life expectancy as well as the parents' life expectancies would constitute harmless error, since the average healthy child will ordinarily outlive his or her parents. Appellant contends that the special circumstances presented by this case, however, distinguish it from the ordinary case in that the child had a disease which might have shortened her life. Appellant contends that the parents cannot recover for a lifetime of suffering where it can be shown that the child would have died of other causes within the parents' life expectancies.
There is some dispute as to the true effect of the trial court's order in limine. Of course, the harmful consequences of meningitis and the necessity for prompt diagnosis and treatment were the subject of extensive testimony by the medical experts. The appellees assert that the court did not specifically exclude evidence pertaining to the child's life expectancy or as to the ordinary effects of the disease of meningitis. Rather, they maintain, the order was limited to the exclusion of evidence pertaining to the quality of the deceased *621 child's life.[2] While it appears that the main thrust of the motion in limine was directed to evidence of quality of life, it also included references to reduced life expectancy.
However, while we have some concern for the court's failure to permit evidence of the reduced life expectancy of the child due to meningitis, we conclude that appellant's failure to proffer evidence of the child's decreased life expectancy is fatal to his claim on appeal. The Florida Evidence Code requires a proffer under these circumstances. See Fla. Stat. § 90.104(1)(b) (1987). This is not a case where we can discern the specifics of the excluded evidence from the comments of counsel. We do not know, for instance, whether evidence of a specific decrease was contemplated or whether the evidence would simply suggest some decreased life expectancy for meningitis patients. We are left to speculate as to what the evidence would have been. Although appellant contends now that medical witnesses were prepared to testify as to the specific life-shortening effect of meningitis, we believe the failure to present a proffer for our review precludes appellant from claiming reversible error on appeal.
Appellant also asserts error in the court's decision to exclude evidence of the deceased child's impaired quality of life had she lived. Despite his argument, appellant denies that he is suggesting that the loss to a parent of a disabled child is worth less than the loss of a healthy child. Such candor is both refreshing and commendable. Indeed, and unlike the issue of life expectancy, it is difficult to imagine circumstances in which a jury could properly consider, much less determine, that the loss to a parent of an ailing child would be less than the loss of a healthy child. We believe a trial court should be given substantial latitude in the admission or rejection of evidence of this nature. Under these circumstances we do not believe appellant has demonstrated substantial harm in the court's decision to exclude evidence of the child's diminished quality of life. This is especially true since the court did not exclude evidence of the usual harmful consequences of meningitis.
We have considered but also find no reversible error in appellant's other claims of error by the trial court.
Accordingly, we affirm the judgment and orders of the trial court.
STONE and WARNER, JJ., concur.
NOTES
[1] Other jurisdictions are in accord with this rule. In Dugal v. Commercial Standard Insur. Co., 456 F. Supp. 290, 293 (W.D.Ark. 1978), the court noted that under the Arkansas Wrongful Death Act, the administrator of a deceased child's estate may recover on behalf of the child's survivors (parents, siblings) for their own mental anguish occasioned by the child's death, provided the survivors suffer more than the normal grief at the loss of a child. In determining the extent and compensability of mental anguish, the court held that juries may consider, among other factors, the expected life expectancies of the deceased and the survivors. The court concluded that the comparative lifespan of the parents and the deceased child was the proper measure of time for mental anguish damages in wrongful death cases. In Adams v. Hunter, 343 F. Supp. 1284 (D.S.C. 1972), the court found mortality tables to be proper evidence to prove that a deceased teenager, previously healthy and hearty, would ordinarily outlive both his parents. But the parents' claim for damages could extend only over their lifetimes. See also Gulf States Util. Co. v. Reed, 659 S.W.2d 849 (Tex. Ct. App. 1983) (implying 13 year old child's health was relevant to matter of damages due his mother upon his wrongful death).
[2] The appellees also note appellant's failure to object to the jury instruction which did not direct the jury to consider the deceased's and the survivors' relative life expectancies. The instruction was read verbatim from the standard jury instructions, which state:

Damages of surviving parent of minor child:
The mental pain and suffering of (name parents) as a result of the injury and death of (name minor child). In determining the duration of such mental pain and suffering, you may consider the life [expectancy] [expectancies] of the surviving parent[s] together with the other evidence in the case.
Florida Standard (Civ.) Jury Instructions 6.6(h). Presumably this instruction permits the consideration of evidence of the child's life expectancy in cases such as the instant case. The note on the use of instruction 6.6(h) states that upon revision, "the [drafting] committee acknowledged that the duration of future losses [i.e., for mental anguish] may be longer or shorter than `joint life expectancy,' depending on the evidence."