806 So.2d 539 (2002)
Ademir DOS SANTOS, Appellant,
v.
Alexander CARLSON, Appellee.
No. 3D00-201.
District Court of Appeal of Florida, Third District.
February 6, 2002.
Kubicki Draper and Caryn L. Bellus, Miami, for appellant.
Julio V. Arango, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and FLETCHER, and RAMIREZ, JJ.

*540 ON MOTION FOR REHEARING

RAMIREZ, J.
We grant the motion for rehearing, withdraw our prior opinion dated November 14, 2001, and substitute the following:
We reverse the exclusion of the appellant/defendant's expert witness because we conclude that the trial court abused its discretion.
During opening statements, the trial court, on its own initiative, called for a sidebar conference. Counsel for the plaintiff told the judge that they intended to call only one medical expert, Dr. Orlando Lopez, but defense counsel reported that he intended to call Dr. Robert Kagan, who had reviewed the plaintiffs MRI, and Dr. Salvador Ramirez, an orthopedic surgeon. The court asked defense counsel if Dr. Ramirez had seen the MRI. Counsel responded that Dr. Ramirez had not done so. Rather his radiologist, Dr. Kagan, would interpret the MRI for the defense and testify that the MRI did not show anything related to the automobile accident. When the court learned that the plaintiff had not been provided with a copy of Dr. Kagan's report, the doctor was excluded from testifying. Defense counsel argued that when the plaintiff requested the report, it did not exist.[1] He offered to provide a copy immediately and explained that the doctor would not be testifying for several hours. The trial court, nevertheless, excluded the witness because the defendant had "an obligation to update any discovery ... a continuing obligation to provide it." This is legally incorrect.
Florida Rule of Civil Procedure 1.280(e) specifically states that a party who has properly responded to discovery "is under no duty to supplement the response to include information thereafter acquired." We conclude that while the defendant may have violated the pretrial order, the violation did not justify the sanction imposed in this case.
The Uniform Order Setting Cause for Jury Trial directs the parties to furnish each other with a list of all expert witnesses intended to be called at trial and directs that "each party shall furnish all information required by Rule 1.280(b)(4)(A)." The defendant argues that the order does nothing more than mandate compliance with the rule. That would make the order a nullity. The order does more than that. It directs each party to "furnish opposing counsel with a written list containing the names and addresses of all expert witnesses (impeachment, rebuttal or otherwise) intended to be called at trial and only those witnesses listed shall be permitted to testify." With respect to expert witnesses, the order contains the reference to rule 1.280(b)(4)(A) quoted above.
The defendant's so-called compliance with the order was to list Dr. Kagan's name and address. It also disclosed that the "expert will testify as to the findings of his examination of the MRI scan of the plaintiff." As already noted, no report was provided to elucidate on this cryptic revelation. We cannot agree with the defendant that this complied with the pretrial order. However, it is incumbent upon opposing counsel to raise a timely objection. Plaintiff could have successfully struck Dr. Kagan in a pretrial motion. He could have deposed Dr. Kagan. Pursuant to rule 1.280(b)(4)(A), he could have propounded interrogatories and obtained a whole catalog of information about Dr. Kagan's litigation experience. He could have insisted that the defendant provide him with "the *541 subject matter on which the expert is expected to testify, and to state the substance of the facts and opinion to which the expert is expected to testify and a summary of the grounds for each opinion." Fla.R.Civ.P. 1.280(b)(4)(A)(i). But he could not quietly sit back in blissful ignorance, then successfully deprive the opponent of a crucial witness. Defendant, too, could have avoided a lot of grief by providing better compliance with the court's order.
We sympathize with the trial court's frustration at the cavalier attitude adopted by some attorneys. Judges can and should expect compliance with their orders. But, as the supreme court explained in Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), not every discovery violation should result in the automatic exclusion of a witness. The trial court should have determined what prejudice was visited upon the plaintiff in this case. "Prejudice in this sense refers to the surprise in fact of the objecting party...." Id. at 1314. Furthermore, the trial court should examine: "(i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases)." Id. In this case, given the circumstances, the exclusion of Dr. Kagan was too drastic a sanction.
Here, the plaintiff knew about Dr. Kagan, as his name had been provided almost two years before trial. Surely counsel could not argue that they were surprised that Dr. Kagan would testify either that the MRI was negative or that its findings were unrelated to the accident. Any experienced trial attorney should have been able to cope with such testimony. There would have been no disruption to the trial if plaintiffs counsel had been given a copy of the report during opening statements, as the witness would not be testifying until after the lunch recess, allowing ample time to review the report.[2]
As we recently stated in Pascual v. Dozier, 771 So.2d 552 (Fla. 3d DCA 2000):
The right to call witnesses is one of the most important due process rights of a party; accordingly, the exclusion of the testimony of expert witnesses must be carefully considered and sparingly done. Furthermore, a trial court should exercise caution when the witness sought to be excluded is a party's only witness or one of the party's most important witnesses because if the witness is stricken, that party will be left unable to present evidence to support his or her theory of the case.
Id. at 554 (citations omitted). Here, Dr. Kagan was arguably the defendant's most important witness because he was the only one that could counter the plaintiff's MRI testimony. Dr. Ramirez had not reviewed the MRI and could not be asked to do so because he had already been deposed by videotape for trial two days before. The defense might have still been able to present its MRI evidence through its neurologist, Dr. Allan Herskowitz, had he not also been excluded.
*542 The exclusion of a witness can be deemed harmless if the testimony would have been cumulative. See Nicholson v. Hospital Corp. of America, 725 So.2d 1264 (Fla. 4th DCA 1999); Centex-Rooney Const. Co., Inc. v. Martin County, 706 So.2d 20 (Fla. 4th DCA 1997); Crawford v. Shivashankar, 474 So.2d 873 (Fla. 1st DCA 1985). In this case, the trial court's ruling allowed the plaintiff to dwell on the unrebutted MRI evidence throughout the trial and plaintiff's counsel effectively hammered the defense with this evidence during closing argument. Because not a single defense expert was allowed to testify regarding the MRI evidence, the exclusion of Dr. Kagan cannot be termed as harmless.
Reversed and remanded for a new trial.
FLETCHER, J., concurs.
SCHWARTZ, C.J., dissents.
NOTES
[1] The plaintiff's request for production of all expert reports was dated July 29, 1997. Dr. Kagan prepared his report two years later, on June 27, 1999.
[2] The gist of the report can be gleaned from one paragraph, which would have taken counsel a few seconds to read:

In summary, there is no objective evidence of any injury to the cervical spine which could be causally related to a motor vehicle accident occurring on 7/31/93. Specifically, there is no evidence of disc herniation. The degenerative changes noted, which are most prominent at C6/7, take a number of years to occur and represent a pre-existing condition in their entirety.