401 So.2d 1310 (1981)
Robert Dennis BINGER, et Ux., Petitioners,
v.
KING PEST CONTROL, Respondent.
No. 58882.
Supreme Court of Florida.
July 16, 1981.
*1311 Arnold R. Ginsberg of Horton, Perse & Ginsberg and Harry A. Gaines, Miami, for petitioners.
Carey, Dwyer, Cole, Selwood & Bernard, Fort Lauderdale, and Edna L. Caruso, West Palm Beach, for respondent.
ENGLAND, Justice.
In this civil proceeding, we endeavor to reconcile conflicting district court decisions regarding the effect of a pretrial failure to disclose the names of witnesses. King Pest Control v. Binger, 379 So.2d 660 (Fla. 4th DCA 1980); Mall Motel Corp. v. Wayside Restaurants, Inc., 377 So.2d 41 (Fla. 3d DCA 1979); Hartstone Concrete Products Co. v. Ivancevich, 200 So.2d 234 (Fla. 2d DCA 1967). The situation which brings us the conflict arose when the Bingers were permitted to present at trial the testimony of an impeachment witness whose identity had not previously been disclosed to King Pest Control.
The detailed facts of this dispute, which are amplified in the district court's opinion,[1] begin with a pretrial order requiring each party to exchange witness lists at least 20 days prior to trial. Both parties complied with this order, and the Bingers not only specifically listed their primary witnesses but advised that they would call to testify "any and all necessary" impeachment or rebuttal witnesses.
Over a month before trial, King Pest Control filed an amended pretrial catalog naming as a witness Burton Murrow, an accident reconstruction expert. The Bingers took Murrow's deposition approximately four days before trial and subjected it to scrutiny by their own privately-retained expert. The Bingers did not identify their expert for King Pest Control, however. Following Murrow's testimony at trial, the Bingers sought to introduce the testimony of their own expert to impeach Murrow, and over King Pest Control's objection they were permitted to do so.
King Pest Control successfully appealed the trial court's action to the Fourth District Court of Appeal, obtaining a reversal of the Bingers' judgment and a remand for a new trial. Noting considerable confusion in the case law regarding pretrial disclosure of witnesses' names, the district court relied on the spirit of the discovery rules to suggest that
[a court ordered witness list] should contain the names and addresses of all persons who, within reason, a party might call as a witness, be they for impeachment, corroboration or to adduce substantive proof, and regardless of the part of the trial in which they might appear. As we see it, the key to the proper administration of such a rule is the trial judge, clothed as he is, with a broad discretion in resolving questions arising during a trial.[2]
The court further concluded that a trial judge's discretion in determining whether an unlisted witness can testify should be guided primarily by whether prejudice would accrue to the objecting party. The court defined prejudice to mean
that the objecting party might well have taken some action to protect himself had he timely notice of the witness and that there exist no other alternatives to alleviate the prejudice... .[3]
We essentially agree with the district court's analysis.
The Bingers argue here that the law in Florida is well-settled to the effect that *1312 impeachment witnesses need not be disclosed prior to trial. The rule, they suggest, is rooted in the belief that all witnesses, but especially expert witnesses, would be tempted to exaggerate or stray from the truth if they knew from looking at a witness list that their testimony was not going to be challenged.
King Pest Control argues that the rule permitting nondisclosure of impeachment witnesses is not so broad as the Bingers contend, but rather is limited to those situations in which the need for an impeachment witness is totally unforeseeable and arises from matters which come out for the first time during trial. They suggest that an impeachment witness who testifies on an issue disclosed by the pleadings or through discovery must be identified prior to trial, in order to prevent a party from secreting a witness and waiting to ambush his opponent's witnesses. They argue that trials in Florida are no longer sporting matches, and that full disclosure is the order of the day. See, e.g., Kilpatrick v. State, 376 So.2d 386 (Fla. 1979).
Although both parties' urgings find support in Florida case law, we accept neither the Bingers' nor King Pest Control's view of the role of witness disclosure in civil trial practice. Moreover, whether and under what circumstances the names of court ordered witnesses must be disclosed prior to trial implicates the entire concept of witness disclosure underlying civil trial practice in Florida.[4] For that reason, we decline the invitation of both counsel to limit our consideration to impeachment witnesses only, or to create jurisprudential niches for particular types of impeachment testimony such as expert or character witness testimony.[5] For the reasons stated below, we essentially approve the Fourth District's reasoning, which leaves ultimate control over witness disclosure problems to the broad discretion of the trial judge and focuses on prejudice in the preparation and trial of a lawsuit.
In order to resolve the dispute in this case and provide reasonable guidance to the bench and bar in future cases, it is not essential that we plow new ground in the field of civil practice. Existing Rule 1.200 of the Florida Rules of Civil Procedure provides an adequate framework, when supplemented by a faithful adherence to the notions of discovery which underpin civil trial practice and the good judgment of Florida's trial judges. Conceding, however, the existence of a confusing string of witness disclosure cases, we can place Rule 1.200 in better perspective by providing a general overview of these precedents.
Florida's district courts seem to have taken four approaches to the problem of pretrial witness disclosure. Several cases suggest that a witness need not be disclosed if he is an "impeachment" witness. See Hartstone Concrete Products Co. v. Ivancevich, 200 So.2d 234 (Fla. 2d DCA 1967); A.A. Holiday Rent-A-Car, Inc. v. Edwards, 190 So.2d 362 (Fla. 3d DCA 1966). At least one case appears to conclude that, subject to the trial judge's discretion, a "rebuttal" witness need not be disclosed prior to trial. See Williamson Truck Lines, Inc. v. Kellar, 301 So.2d 818 (Fla. 3d DCA 1974). Yet another case suggests that a witness need not be disclosed if he will respond to any new or surprise testimony brought out at trial. See Atlas v. Siso, 188 So.2d 344 (Fla. 3d DCA 1966).
The district court below identified each of these approaches and concluded that none "is adequate to furnish practical rules which can be used by the Bench and Bar to *1313 resolve this thorny problem in the midst of a trial."[6] We agree completely.
The vast majority of district courts in Florida, including the Fourth District in the instant case, have concluded that a fourth approach will best meet the objectives of modern civil trial practice in this state. That approach places all problems regarding the testimony of undisclosed witnesses within the broad discretion of the trial judge. It thus vests in the trial judge the interpretation and enforcement of any pretrial order mandating witness disclosure, and limits reviewing courts to reversals only in cases of a clear showing of abuse prejudicial to the affected party. See e.g., Fuller v. Rinebolt, 382 So.2d 1239 (Fla. 4th DCA 1980); McDonald Air Conditioning, Inc. v. John Brown, Inc., 285 So.2d 697 (Fla. 4th DCA 1973); Green v. Shoop, 240 So.2d 85 (Fla. 3d DCA 1970); County of Brevard v. Interstate Engineering Co., 224 So.2d 786 (Fla. 4th DCA 1969); Alvarez v. Mauney, 175 So.2d 57 (Fla. 2d DCA 1965).
The only prior decision of this Court directly addressing the issue of witness disclosure leaned toward this fourth approach. Rose v. Yuille, 88 So.2d 318 (Fla. 1956). In that case the trial court's pretrial order had directed the plaintiff to reveal the names of all his witnesses. Four days before trial the plaintiff learned of an additional, material witness and promptly notified the defendants of the witness' name. Nothing was said, though, as to what the witness would say or whether his testimony would be material and admissible. The trial court refused to permit the witness to testify, and this Court affirmed that decision on the basis of no abuse of discretion.
Although Rose is somewhat dated, the general policy of full and open disclosure underlying the decision has been carried forward in Florida's rules of discovery. The goals of these procedural rules are "to eliminate surprise, to encourage settlement, and to assist in arriving at the truth." Spencer v. Beverly, 307 So.2d 461, 462 (Fla. 4th DCA 1975) (Downey, J., concurring), cert. denied, 314 So.2d 590 (Fla. 1975). We recently reiterated those goals.
A search for truth and justice can be accomplished only when all relevant facts are before the judicial tribunal. Those relevant facts should be the determining factor rather than gamesmanship, surprise, or superior trial tactics.
Dodson v. Persell, 390 So.2d 704, 707 (Fla. 1980).
The goals underlying discovery practice are readily apparent in Florida Rules of Civil Procedure 1.200(c), which provides that a trial court's pretrial order detailing the agreements made by the parties "shall control the subsequent course of the action unless modified at the trial to prevent injustice." Consistent with this rule, we now hold that a pretrial order directing the parties to exchange the names of witnesses requires a listing or notification of all witnesses that the parties reasonably foresee will be called to testify, whether for substantive, corroborative, impeachment or rebuttal purposes. Obviously, a general reference to "any and all necessary" impeachment or rebuttal witnesses, as was the case here, constitutes inadequate disclosure. We expressly disapprove decisions in the first three categories of witness disclosure cases which hold or imply that certain types of witnesses are automatically exempt from the dictates of a pretrial disclosure order.[7]
It follows, of course, that a trial court can properly exclude the testimony of a witness whose name has not been disclosed in accordance with a pretrial order.[8] *1314 The discretion to do so must not be exercised blindly, however, and should be guided largely by a determination as to whether use of the undisclosed witness will prejudice the objecting party.[9] Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases).[10] If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify.
Requiring reasonable compliance with a pretrial order directing witnesses' disclosure will help to eliminate surprise and avoid trial by "ambush." The argument that the possibility of being ambushed by an unlisted impeachment witness encourages truthful testimony reflects an outdated methodology for ascertaining the truth at trials. It lacks the solid foundation on which courts should alone build exceptions to general discovery principles. Moreover, the logic of the proposition is fairly disputable. The listing of contradictory witnesses whose impeachment testimony can be discovered by interrogatory or deposition provides equal assurance that trial testimony will be accurate and truthful.
We cannot talk about pretrial discovery without mentioning local pretrial practices. We have intentionally left room for the operation of local rules and customs within the broad parameters of our decision. Local customs regarding pretrial disclosure of witnesses vary throughout the circuits in Florida, and these variations can and should continue. For example, in some circuits the pretrial disclosure order not only directs that witnesses' names be exchanged, but expressly prevents the testimony of any witness not identified within a certain period of time. In other circuits, it is common for the order to exempt by category certain types of witnesses from being listed.[11] Another local practice requires that counsel for each party demand witnesses' names before a court order is entered or in lieu of a court-directed exchange of names. These local variations in discovery practice within the circuits of Florida in no way derogate from our decision, and we leave their interpretation and application, within the stated goals of discovery, to the presiding trial judge in each case.
Applying the above rules to the instant case, we agree with the district court that the Bingers should have listed their expert witness on an amended pretrial witness list. The only reasonable construction of the pretrial order of the trial court was that all witnesses' names should have been exchanged. Since the Bingers knew the name of King Pest Control's expert witness and the substance of his testimony approximately four days before trial, they knew or reasonably might have known that they would call their own expert as a witness. They knew, of course, who he was and what he would say. The only justification for not disclosing his name was a belief that they could impeach King Pest Control's expert as a surprise tactic. This intentional nondisclosure, combined with the surprise and disruption occasioned by the use of the unlisted witness and inability to alleviate *1315 these problems,[12] convinces us King Pest Control was prejudiced in the presentation of its case, and that the district court was correct in directing a new trial.
The decision of the district court is approved.
ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, Chief Justice, dissenting:
Because I believe the majority confuses discovery with a party's ability to call an unlisted impeachment witness, I respectfully dissent.
NOTES
[1] King Pest Control v. Binger, 379 So.2d 660 (Fla. 4th DCA 1980).
[2] Id. at 663.
[3] Id.
[4] Our analysis assumes the existence of a valid pretrial order directing the parties to exchange the names of their witnesses. There is no continuing duty of disclosure under Florida's Rules of Civil Procedure, as there is under our criminal rules. See Fla. R. Crim. P. 3.220(f).
[5] We do, however, limit our analysis to pretrial disclosure of witnesses. Although similar considerations may apply to the pretrial disclosure of nontestimonial evidence, see Eastern Steamship Lines, Inc. v. Martial, 380 So.2d 1070 (Fla. 3d DCA 1980), cert. denied, 388 So.2d 1115 (Fla. 1980) (defendants' attempt to introduce photographs not listed on pretrial catalog), we are not prepared to say that other considerations may not be relevant in these situations.
[6] King Pest Control v. Binger, 379 So.2d at 662.
[7] Nothing in this concept of trial practice requires that one party disclose his case to the other in full. We are dealing only with an exchange of witnesses' names. It remains the obligation of each attorney to learn through interrogatories, depositions or any other means he selects, the nature of the testimony which will be offered and the extent to which he intends to meet or deal with it at trial. Negligence in discovery is not an issue in this case.
[8] See McDonald Air Conditioning, Inc. v. John Brown, Inc., 285 So.2d 697 (Fla. 4th DCA 1973); County of Brevard v. Interstate Eng'r Co., 224 So.2d 786 (Fla. 4th DCA 1969).
[9] Green v. Shoop, 240 So.2d 85 (Fla. 3d DCA 1970). See also Fuller v. Rinebolt, 382 So.2d 1239 (Fla. 4th DCA 1980); Clarke v. Sanders, 363 So.2d 843 (Fla. 4th DCA 1978).
[10] See DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193 (3d Cir.1978); Slomanson, Supplementation of Discovery Responses in Federal Civil Procedure, 17 San Diego L.Rev. 233, 258 n. 149 (1980); Note, 43 Tenn.L.Rev. 124, 130-31 (1975).
[11] See Mall Motel Corp. v. Wayside Restaurants, Inc., 377 So.2d 41 (Fla. 3d DCA 1979) (pretrial disclosure order specifically excluded impeachment witnesses).
[12] All of these factors are readily evident from the record of this proceeding.